UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ESOTERIX GENETIC LABORATORIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> QIAGEN INC. AND QIAGEN MANCHESTER, LTD., <br><br> Defendants. | C.A. NO. 14-CV-13228-LTS |

**PLAINTIFF ESOTERIX GENETIC LABORATORIES LLC'S SUR-REPLY BRIEF
IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Esoterix Genetic Laboratories LLC ("EGL") submits this sur-reply brief to bring to the Court's attention a new Guidance issued by the U.S. Patent & Trademark Office ("PTO") on December 16, 2014, after the parties submitted their briefs on the motion to dismiss of Defendants Qiagen Manchester and Qiagen Inc. ("Qiagen"). In the prior briefing, the parties discussed the PTO's Guidance For Determining Subject Matter Eligibility Of Claims Reciting Or Involving Laws of Nature, Natural Phenomena, & Natural Products, dated March 4, 2014 (the "March Guidance"). The new PTO Guidance, titled 2014 Interim Guidance on Patent Subject Matter Eligibility ("December Guidance"), supersedes the March Guidance. *See* 79 Fed. Reg. 74618, 74619 (Dec. 16, 2014).[1] The December Guidance supports EGL's position that the claims of U.S. Patent No. 7,294,468 (the "'468 patent") are patent eligible.

---

[1] The December Guidance, which is available at 79 Fed. Reg. 74618, is attached as Exhibit 3 to the Declaration of Christopher R. Howe ("Howe Declaration"), dated January 9, 2014 and filed herewith.

**ARGUMENT**

I.  **THE PTO'S DECEMBER GUIDANCE MAKES IT CLEAR THAT THE CLAIMS OF THE '468 PATENT ARE PATENT ELIGIBLE**

The parties agree that the U.S. Supreme Court established an applicable two-part test for determining patent eligibility in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S.Ct. 2347, 2355-57 (2014). The first step is to determine whether the claims are "directed to one of those patent ineligible concepts," like natural law. If the answer is "no," the claims are patent eligible. The December Guidance makes it clear that the answer is "no" for the claims of the '468 patent. Thus, the claims are patent eligible. The claims also contain an "inventive concept" under the second step of the *Alice Corp.* test, as explained in EGL's Opposition Brief at 7, but the Court need not engage in such an analysis because Qiagen's patent ineligibility argument does not survive the first step.

In its Opposition Brief, EGL argued that the patent eligibility of the '468 patent claims is supported by the March Guidance. In the December Guidance, the PTO modified its Guidance in a notable manner, which further reinforces that the claims of the '468 patent are patent eligible and undermines Qiagen's attempt to distinguish the PTO's hypothetical patent eligible method of treatment claim.

Applying the first step of the *Alice Corp.* test, the March Guidance asked: "Does the claim recite or involve judicial exception(s)?" March Guidance at 2. The December PTO Guidance clarified that a claim that merely recites or involves a natural law does not satisfy the first step of the *Alice Corp.* test. *See* 79 Fed. Reg. at 74621-24; *see also Alice Corp.*, 134 S.Ct. at 2355-57. Instead, the claim must be "***directed*** to a law of nature." *See* 79 Fed. Reg. at 74621 (emphasis added); *accord Alice Corp.*, 134 S.Ct. at 2355. The PTO explained that this distinction changes the analysis:

> This analysis differs from the March 2014 Procedure in certain respects. Note, for example, the test for determining whether a claim is directed to a "product of nature" exception is separated from the analysis of whether the claim includes significantly more than the exception. Also, *the application of the overall analysis is based on claims directed to judicial exceptions (defined as claims reciting the exception, i.e., set forth or described), rather than claims merely "involving" an exception.*

79 Fed. Reg. at 74619 n.2 (emphasis added).

To illustrate the change of analysis, the PTO's hypothetical method of treatment claim concerning the naturally-occurring substance, amazonic acid (described in the March Guidance at Example III.B, Claim 3) was revised and expanded upon in Example 3 of the Nature-Based Product Examples published by the PTO to be used in conjunction with the December Guidance ("December Examples").[2]  As with the March Examples, the December Examples provide the following sample claim: "A method of treating colon cancer, comprising: administering a daily dose of purified amazonic acid to a patient suffering from colon cancer for a period of time from 10 days to 20 days, wherein said daily dose comprises about 0.75 to about 1.25 teaspoons of amazonic acid." *Compare* Example III.B, Claim 3, *with* December Examples, Example 3, Claim 7.  Though both the March and December Examples conclude that the claim is patent eligible, the December Example finds that the claim does not pass the first step of the *Alice Corp.* test and therefore is patent-eligible.  The PTO explains: "analysis of the claim as a whole indicates that the claim is focused on a process of practically applying the product to treat a particular disease (colon cancer), and not on the product *per se*." December Examples, Example 3, Claim 7, at 5.  Since the claim is not "directed" to a natural law, no analysis under the second step of the *Alice Corp.* test is required to determine whether the claim amounts to "significantly more" than the

---

[2]The PTO's Nature-Based Product Examples, which are available online at http://www.uspto.gov/patents/law/exam/mdc_examples_nature-based_products.pdf, are attached to the Howe Declaration as Exhibit 4.

natural law (*i.e.*, "inventive concept"). *Id.*; 79 Fed. Reg. at 74621. The claims of the '468 patent are focused on treating the "particular disease" non-small cell lung cancer, and are likewise patent eligible because the claims are not "directed" to a natural law.

In its Reply Brief, Qiagen attempted to distinguish the amazonic acid hypothetical claim from the claims of the '468 patent because the claims of the '468 patent do not recite a specific dosage or time period. Reply Brief at 4. However, the December Examples add an additional example, hypothetical claim 8, which makes it clear that a specific dosage and time period are not required for patent eligibility. Hypothetical claim 8 states: "A method of treating breast or colon cancer, comprising: administering an effective amount of purified amazonic acid to a patient suffering from breast or colon cancer." Like hypothetical claim 7 and the claims of the '468 patent, hypothetical claim 8 is patent eligible because it is focused on applying a natural product to treat a "particular disease."

## II. QIAGEN'S REPLY ARGUMENTS AGAINST PATENTABILITY ARE BASED ON MISCHARACTERIZATIONS OF EGL'S POSITIONS

Qiagen's reply brief mischaracterizes EGL's arguments. First, EGL is not arguing, as Qiagen asserts, that "the discovery of a previously unknown natural law justifies patentability." Reply Brief at 1. Instead, as EGL repeatedly stated in its Opposition Brief, the application of knowledge from a natural law may be patent eligible. The Supreme Court has never wavered from the position that the "application of a law of nature … may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187-88 (1981); *accord Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293-94 (2012); *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2120 (2013). Qiagen's fallback argument is to mischaracterize EGL's position as claiming that *all* applications of genetic knowledge are patent eligible. Reply Brief at 2. However, the Court need not decide such a broad statement of the law

because EGL has not asserted it; instead, EGL argues: the '468 patent claims are patent eligible because they apply the knowledge from certain nucleotide variances in the EGFR gene to increase the effectiveness of treating non-small cell lung cancer with the man-made drugs, gefitinib and erlotinib.

Next, Qiagen claims that EGL's patent claims contain "nothing inventive" but only "conventional techniques." Reply Brief at 3. However, earlier in its Reply Brief, Qiagen admits that, for 12(b)(6) purposes, the Court must take as true that EGL discovered that the drugs gefitinib and erlotinib are more effective in treating non-small cell lung cancer when certain nucleotide variances in the EGFR gene are present. Reply Brief at 1. Qiagen does not – because it cannot – present evidence that prior to EGL's discovery, "conventional techniques" of determining an effective treatment for non-small cell lung cancer involved testing for the presence of these nucleotide variances. *See* Opposition Brief at 2-4. Applying the knowledge learned from the nucleotide variances of the EGFR gene to determine a more effective treatment for non-small cell lung cancer with two man-made drugs was "inventive," and the PTO correctly granted a patent for this invention.

Qiagen then asserts that EGL did not identify any terms requiring claim construction. This is incorrect; in fact, as examples, EGL quoted the terms from claim 1 of the '468 patent that require construction: "A method for determining an increased likelihood of pharmacological effectiveness of treatment by gefitinib or erlotinib in an individual diagnosed with non-small cell lung cancer." As to the disputed construction of these terms, EGL has asserted that they should be construed analogous to other patent claims claiming a method of treating a disease with the named drugs, while Qiagen argues the opposite. *Compare* Opposition Brief at 12, *with* Reply Brief at 4.

Finally, in attempting to avoid any factual disputes, Qiagen mischaracterizes EGL's arguments. *Compare* Reply Brief at 7, *with* Opposition Brief at 12. First, as explained above, EGL is not asserting that the identified nucleotide variances are patentable, but rather the patent eligible subject matter includes the non-conventional techniques of using the knowledge from those nucleotide variances to treat non-small cell lung cancer with man-made drugs. One issue of fact is whether the application of this knowledge to treat non-small cell lung cancer was non-conventional. Next, Qiagen mischaracterizes EGL's argument that the claims of the '468 patent impose meaningful limitations on the use of the natural law such that others are not substantially foreclosed from using it. Qiagen argues that natural laws that are narrow are still not patent eligible. But, this argument misses the point because the factual issue surrounds the scope of the use of the natural law, not the scope of the natural law itself. EGL argues that the claims are limited to *using* the natural law in a narrow way, *i.e.*, to treat non-small cell lung cancer with gefitinib and erlotinib, such that these claims do not foreclose others from applying the knowledge of the specified nucleotide variances in other ways, as an additional explanation for why its claims remain patentable under recent case law.[3]

## CONCLUSION

For the foregoing reasons, EGL respectfully requests that this Court deny Qiagen's motion to dismiss in all respects or grant EGL leave to file an amended complaint.

---

[3] In a footnote, Qiagen argues that it is not clear whether the "clear and convincing" standard applies to a section 101 analysis and cites to a concurring opinion in *Ultramercial v. Hulu*, 772 F.3d 709 (Fed. Cir. 2014). *See* Reply Br. at 2 n.1. However, the District Court is obligated to apply the "clear and convincing" standard because it continues to be binding precedent. *See California Inst. of Tech. v. Hughes Commc'ns, Inc.*, No. 2:13-cv-07245, 2014 WL 5661290, at *2 n.6 (C.D. Cal. Nov. 3, 2014).

Respectfully submitted,

ESOTERIX GENETIC LABORATORIES LLC

By its Attorneys,

CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.

/s/ Christopher R. Howe
James M. Campbell (BBO #541882)
jmcampbell@campbell-trial-lawyers.com
Christopher R. Howe (BBO #652445)
chowe@campbell-trial-lawyers.com
One Constitution Plaza, 3rd Floor
Boston, MA 02129
Tel. (617) 241-3000
Fax (617) 241-5115

KELLEY DRYE & WARREN LLP
Robert I. Steiner (*pro hac vice*)
rsteiner@kelleydrye.com
Beth Jacob (*pro hac vice*)
bjacob@kelleydrye.com
Jaclyn M. Metzinger (*pro hac vice*)
jmetzinger@kelleydrye.com
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7843
Fax: (212) 808-7897

## CERTIFICATE OF SERVICE

I, Christopher Howe, counsel for plaintiff Esoterix Genetic Laboratories LLC, hereby certify that on January 15, 2014, I caused to be filed a copy of the foregoing Sur-Reply Brief via the Court's ECF System. All counsel of record will be electronically notified of and served with a copy of this filing.

/s/ Christopher R. Howe
Christopher R. Howe