IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESOTERIX GENETIC LABORATORIES LLC,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>QIAGEN INC. and QIAGEN MANCHESTER, LTD.,<br><br>　　　　Defendants. | CASE No. 14-CV-13228-LTS |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUR-REPLY
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS –
LEAVE TO FILE GRANTED ON JANUARY 23, 2015**

Peter E. Ball (BBO #546031)
Ryan M. Cunningham (BBO #661440)
SALLY & FITCH LLP
Tel. (617) 542-5542
Fax. (617) 542-1542
peb@sally-fitch.com
rmc@sally-fitch.com

Robert R. Baron, Jr. (Admitted *pro hac vice*)
Marc S. Segal (Admitted *pro hac vice*)
Daniel A. Nadel (Admitted *pro hac vice*)
BALLARD SPAHR LLP
Tel. (215) 665-8500
Fax (215) 864-8999
baron@ballardspahr.com
segalm@ballardspahr.com
nadeld@ballardspahr.com

Attorneys for QIAGEN Inc. and QIAGEN Manchester, Ltd.

Dated:  January 23, 2015

The opening and reply briefs of QIAGEN Manchester, Ltd. and QIAGEN Inc. (collectively, "QIAGEN") explain that the United States Supreme Court decision *Mayo Collaborative Services. v. Prometheus Laboratories*, 132 S. Ct. 1289 (2012) is on-point in rendering the '468 Patent claims ineligible subject matter under 35 U.S.C. § 101. On January 15, 2015, after being granted leave, EGL filed a sur-reply, asserting that the Court should instead apply a new, non-binding "*Interim* Guidance," which the Patent and Trademark Office ("PTO") issued last month to invite and collect public comment. Without mentioning *Prometheus*, EGL argues that the Interim Guidance demonstrates a new approach to evaluating patent eligibility, and that its new guidance shows that the '468 Patent is patent-eligible. (See Sur-Reply, Dkt. 44 at 2-4 and its Ex. 4, Dkt. 45-2, at 2-5.) EGL's argument is wrong for a number of reasons.

As a threshold matter, the Interim Guidance "does not constitute substantive rulemaking and does not have the force and effect of law." Interim Eligibility Guidance, Dkt. 45-1, 79 Fed. Reg. 74618, 74619 (Dec. 16, 2014). Even if the Interim Guidance was final, it still would not be binding on this Court. *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 23 F. Supp. 3d 50, 64 n.16 (D. Mass. 2014). *Prometheus* is.

More fundamentally, EGL continues to rely on a hypothetical example in the Interim Guidance that does not apply to the '468 Patent, while ignoring the example that directly applies. Specifically, EGL focuses on the portion of the Interim Guidance regarding the judicial exception of "**_nature-based products_**." (*See* Dkt. 45-2 (titled "Nature-Based Products") at Example 3, Claims 7 & 8.) A "nature-based product" is a tangible thing that includes "naturally occurring products and some man-made products that are essentially no different from a naturally occurring product." 79 Fed. Reg. at 74623. The '468 Patent does not involve nature-based products.

In the example relating to nature-based products relied on by EGL, the nature-based product is the fictional amazonic acid. (Dkt. 45-2, at 3.) EGL directs the Court to hypothetical patent claims 7 and 8 that do not recite the amazonic acid itself, but rather recite a method of directly *administering* to a patient an effective amount of the nature-based product in order to treat colon cancer. (*Id.*) According to the Interim Guidance, these hypothetical claims must be directed to the product *per se* to meet Step 1 of the *Alice* test, and they do not because they are "focused on a process of practically applying the [nature-based] product to treat a particular disease . . . and not on the product *per se*." (*Id*. at 5.) Thus, according to the Interim Guidance, these claims would not satisfy Step 1 of *Alice* and would therefore be patent-eligible.

Even if this Guidance survives public comment and is adopted by the PTO without edit, it is inapposite. The claims of the '468 Patent have nothing to do with "nature-based products" and do not require the *administration* of *anything* to a patient. Rather, the claims of the '468 Patent recite a *relationship found in nature* between certain genetic variances in the EGFR gene and the likelihood that EGFR inhibitors will prove effective to treat non-small cell lung cancer. (*See, e.g.,* QIAGEN Opening Br., Dkt. 27, Ex. A, '468 Patent, col. 519, l. 53 to col. 520 l. 49.) This relationship specifically recited in the claims of the '468 Patent "exists in principle apart from any human action," just like the relationship discussed in *Prometheus* between the presence of certain concentrations of metabolites in the blood and the likelihood that a thiopurine drug will be effective to treat GI disorders. *Prometheus*, 132 S. Ct. at 1297.

Notably, EGL does not try to harmonize its arguments with *Prometheus*. Nor does EGL mention that the Interim Guidance discusses not just nature-based products, but also (in a separate section) how to evaluate claims that recite natural correlations such as those found in the '468 Patent, and does so by discussing *Prometheus*. *See* 79 Fed. Reg. at 74627 (Example 5). As

2

the Interim Guidance explains, because the claim in *Prometheus* recites "relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug would prove ineffective or cause harm," it was "directed towards a natural law" under Step 1 of *Alice*. *Id.* Similarly here, because the claims of the '468 Patent specifically recite the correlation between the presence of certain genetic variations and the likelihood that the EGFR inhibitors will be effective, they too are directed to a natural law and thus satisfy Step 1 of *Alice*. Moreover, as the Interim Guidance makes clear (and as QIAGEN noted in its opening brief), to the extent that the claims suggest that doctors take this correlation into account when making treatment decisions, this "simply tell[s] a doctor about the relevant natural laws." *Id.*; *see also* Dkt. 27, at 9-10 (citing *Prometheus*, 132 S. Ct. at 1297). Simply put, the claims of the '468 Patent merely inform the relevant audience about the natural correlation between certain genetic variances and the effectiveness of certain drugs, and recite routine and conventional steps for "determining" whether the law applies.[1] They therefore claim ineligible subject matter under 35 U.S.C. § 101.

---

[1] QIAGEN's earlier briefs explain in detail why the '468 Patent claims do not include an additional inventive concept, and thus fail Step 2 of the *Alice* test. (*See* Dkt. 27, at 10-14; QIAGEN Reply Br., Dkt. 39, at 2-4.)

In light of the foregoing, as well as the reasons set forth in QIAGEN's opening and reply briefs, QIAGEN requests that the Court grant its Motion to Dismiss in its entirety.

Dated:  January 23, 2015

QIAGEN Inc. and QIAGEN Manchester, Ltd.,

By their attorneys,

**Sally & Fitch LLP**

*/s/ Peter E. Ball*
Peter E. Ball (BBO #546031)
Ryan M. Cunningham (BBO #661440)
SALLY & FITCH LLP
Tel. (617) 542-5542
Fax. (617) 542-1542
peb@sally-fitch.com
rmc@sally-fitch.com

Robert R. Baron (Admitted pro hac vice)
Marc S. Segal (Admitted pro hac vice)
Daniel A. Nadel (Admitted pro hac vice)
BALLARD SPAHR LLP
Tel. (215) 665-8500
Fax (215) 864-8999
baron@ballardspahr.com
segalm@ballardspahr.com
nadeld@ballardspahr.com

4

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing document to be filed through the Court's ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on January 23, 2014.

                                        */s/ Peter E. Ball*
                                        Peter E. Ball